# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| VS. | § | CRIMINAL  NO. H-95-271 |
| | § | |
| ERIC DESMOND THOMAS, | § | |
| | § | |
| Defendant-Movant. | § | |
| | § | |
| (Civil Action No. H-05-0597) | § | |

## MEMORANDUM AND ORDER

Eric Desmond Thomas has filed a motion for relief under 28 U.S.C. § 2255, attacking the mandatory life sentence he received, asserting that he was denied effective assistance of counsel at trial and on appeal, and arguing that the Supreme Court decision in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), and *United States v. Booker,* 125 S.Ct. 738 (2005), provide a basis for relief.  The government has answered and moved to dismiss based on procedural default, the lack of any record support for the ineffective assistance challenges he raises, and the inapplicability of *Apprendi* and *Booker* to this case.

Based on a careful review of the section 2255 motion, the motion to dismiss and response, the record, and the applicable law, this court grants the government's motion to dismiss, for the reasons set out in detail below.

**I.    Background**

On October 30, 1995, Thomas was indicted on two counts: one for conspiracy to possess with intent to distribute cocaine base, in violation of 21 U.S.C. § 846, 841(a)(1) and (b)(1)(A)(iii) and possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii).  His first jury trial deadlocked and ended in a mistrial. At a second jury trial held on April 14, 1996, Thomas was found guilty on both counts. Because of his two prior felony drug convictions, Thomas received mandatory life imprisonment under 21 U.S.C. § 841(b)(1)(A).  The Fifth Circuit affirmed on direct appeal, and the Supreme Court denied *certiorari*.

On direct appeal, the Fifth Circuit described the facts, as follows:

> On September 19, 1995, a confidential informant ("CI") notified Officer Terry Bryant of the Houston police department that a man named Tommy Lee wanted to sell the CI two kilograms of crack cocaine. Officer Bryant's plan was to reject the crack cocaine when he received it and to claim that he wanted powder cocaine. This ruse would enable the police to arrest persons in the delivery car because the original offering of crack cocaine would be returned to their possession.
>
> Working undercover, Officer Bryant arranged a meeting with Tommy Lee at a restaurant at 9:00 p.m. that night. The CI drove with Officer Bryant to the restaurant and, once there, introduced Bryant to Tommy Lee. Tommy Lee borrowed Officer Bryant's cell phone and placed two calls to an unidentified person to arrange for the delivery of the cocaine to the restaurant. Shortly thereafter, Tommy Lee pointed out a royal blue Ford Taurus, driven by an unidentified black

> male, as the automobile pulled into the restaurant parking lot. Tommy Lee entered the Ford Taurus and retrieved a shoe box containing what appeared to be crack cocaine for Officer Bryant. Following through on his plan, Officer Bryant rejected the crack, claiming that the deal was for powder cocaine. Tommy Lee returned the shoe box and its contents to the Taurus and the Taurus drove off.
>
> Officer Bryant advised surveillance officers via radio that the cocaine was in the royal blue Ford Taurus. Police officers in the vicinity of the restaurant spotted the Taurus and a chase ensued. The driver tossed the shoe box out of the window. Officers took custody of the box and its contents. Laboratory results of the contraband revealed that it contained 1.8 kilograms of cocaine base at 69.1% purity, which had a street value of approximately $100,000 per kilogram.
>
> As the crack cocaine was recovered, other officers pursued the Taurus and arrested Thomas, the driver, when the chase ended. Thomas had cellophane bags on his person, as well as a cellular telephone, an extra phone battery, and a set of keys in the vehicle. The telephone number of the cellular phone matched the number recorded on the officer's cellular phone, which Tommy Lee had borrowed to call the "unidentified person."

*United States v. Thomas,* 348 F.3d 78, 80-81 (5th Cir. 2003), *cert. denied*, 124 S.Ct. 1481 (2004). On direct appeal, Thomas challenged the sufficiency of the indictment for failing to allege the existence of an identified coconspirator or by including the words "and others known and unknown to the grand jury." Thomas also alleged that the jury instructions on conspiracy, which included a so-called Pinkerton Charge, were flawed; that the district court

erred in denying his request to compel the disclosure of the confidential informant's identity; in admitting his two prior felony drug convictions under Rule 404(b) of the Federal Rules of Evidence; and in failing to engage in a colloquy under 21 U.S.C. § 851(b) before enhancing his sentence by the two prior convictions. The Fifth Circuit affirmed his conviction, and the Supreme Court denied *certiorari*. This motion followed.

In this motion to vacate, Thomas alleges that his trial counsel was ineffective in failing to bring certain information to the court pertinent to the decision not to require the government to reveal the identity of the confidential informant, namely, information from one officer contradicting the testimony of another officer that the confidential informant was not present during a "prep meeting"; failing to reurge the court to reveal the confidential informant's identity after testimony revealed the information that the informant had been present during the "prep meeting"; failing to call witnesses who were present at the scene; failing to interview witnesses; failing to require the government to produce Tommy Lee; failing to object that the indictment failed to allege a specific drug quantity; failing to object to the imposition of sentence based on facts as to drug quantity not alleged nor found by the jury; and failing to raise these claims on direct appeal. Thomas also asserts as substantive errors insufficiency of the indictment for failing to allege a specific drug quantity, an impermissible amendment of the indictment by imposing sentence without alleging or proving to a jury a specific drug quantity; and error under *Apprendi* and *Booker* in imposing sentence without having a jury find the drug quantity.

Thomas's claims, and the government's responses, are examined below.

4

## II.     The Applicable Legal Standards

28 U.S.C. § 2255 provides in relevant part that:

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"Section 2255 provides the primary means of collateral attack on a federal sentence. Relief under this section is warranted for any error that occurred at or prior to sentencing." *Cox v. Warden, Federal Detention Center*, 911 F.2d 1111, 1113 (5th Cir. 1990) (internal quotations and citations omitted). A section 2255 motion requires an evidentiary hearing unless the motion, the files, and the record conclusively show the prisoner is entitled to no relief. *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992). A "'collateral challenge may not do service for an appeal.'" *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982), *cert. denied*, 112 S. Ct. 978 (1992)). A movant is barred from raising claims for the first time on collateral review unless he demonstrates cause for failing to raise the issue on direct appeal and actual prejudice resulting from the error. *Id.* at 232 (citations omitted). If the error is not of constitutional or jurisdictional magnitude, the defendant must show that "the error could not have been raised on direct appeal, and if condoned, would result in a complete miscarriage

of justice." *Id.* at 232 n.7, *quoted in United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir.), *cert. denied*, 113 S. Ct. 621 (1992).

To obtain collateral relief under 28 U.S.C. § 2255, a petitioner "must clear a significantly higher hurdle" than on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982). When a defendant has been convicted and his conviction has been upheld on direct appeal, there is a presumption that the defendant's conviction is fair and final. *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998). "As a result, review of convictions under section 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice." *Id.*; *see also United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999).

Thomas is proceeding *pro se*. Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519 (1972); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999). Pleadings filed by a *pro se* litigant are entitled to a liberal construction that affords all reasonable inferences which can be drawn from them. *See Haines*, 404 U.S. at 521; *see also United States v. Pena*, 122 F.3d 3, 4 (5th Cir. 1997) (citing *Nerren v. Livingston Police Dept.*, 84 F.3d 469, 473 & n.16 (5th Cir. 1996)).

The procedural default rule bars section 2255 relief on claims the movant could have, but did not, raise at trial or on direct appeal. The Supreme Court has stated that, in a section 2255 proceeding, "to obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause'

6

excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *Frady*, 456 U.S. at 167-68, 102 S.Ct. 1584; *see also United States v. Kallestad*, 236 F.3d 225, 227 (5th Cir. 2000) ("A section 2255 movant who fails to raise a constitutional or jurisdictional issue on direct appeal waives the issue for a collateral attack on his conviction, unless there is cause for the default and prejudice as a result."). The procedural bar does not apply to claims that could not have been raised on direct appeal, such as ineffective assistance of counsel, when those claims require the development of a factual record or are not discoverable until after appeal. *See, e.g., United States v. Marroquin*, 885 F.2d 1240, 1245-46 (5th Cir. 1989) (noting that a federal prisoner's double jeopardy challenge to multiple sentences would be more properly raised in a section 2255 motion than on direct appeal); *but see Amiel v. United States*, 209 F.3d 195, 198 (2d Cir. 2000) ("[A]bsent a showing of cause for the procedural default and actual prejudice, a defendant may not raise an ineffective assistance claim for the first time on collateral attack if the defendant had new counsel on direct appeal and the claim is based solely on the record developed at trial.").

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's actions fell below an objective standard of reasonableness and petitioner suffered prejudice as a result. *Strickland v. Washington,* 466 U.S. 668 (1984); *Martin v. Cain,* 246 F.3d 471, 477 (5th Cir. 2001). The district court may dispose of a claim if counsel either rendered reasonably effective assistance or no prejudice can be shown. A court evaluating a claim of ineffective assistance need not address the reasonableness component

7

first. If a petitioner fails to make one of the required showings, the court need not address the other. *Strickland,* 466 U.S. at 697.

In assessing the reasonableness of counsel's performance, the court must indulge a strong presumption that the performance falls within the "wide range of reasonable professional assistance" and that "the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689; *Gray v. Lynn,* 6 F.3d 265, 268 (5th Cir. 1993). If counsel's action is based on well-informed strategic decisions, it is "well within the range of practical choices not to be second-guessed." *Rector v. Johnson,* 120 F.3d 551, 564 (1997) (quoting *Wilkerson v. Collins,* 950 F.2d 1054, 1065 (5th Cir. 1992), *cert. denied,* 509 U.S. 921 (1993)). Effective assistance of appellate counsel does not mean that counsel will raise every available nonfrivolous ground for appeal. *See Evitts,* 469 U.S. at 394; *West v. Johnson,* 92 F.3d 1385, 1396 (5th Cir. 1996). Rather, it means, as it does at trial, that counsel performs in a reasonably effective manner. *See Evitts,* 469 U.S. at 394. A reasonable attorney has an obligation to research relevant facts and law and make informed decisions as to whether avenues will, or will not, prove fruitful. *See Strickland,* 466 U.S. at 690-91.

As to the prejudice portion of the inquiry, a convicted defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Such a reasonable probability makes the proceeding unfair or unreliable, so as to undermine confidence in the outcome. *Green v. Johnson,* 160 F.3d 1029, 1043 (5th Cir. 1998) (citing *Lockhart v. Fretwell,* 506 U.S. 364, 369 (1993)).

**III.   Analysis**

Thomas makes a number of substantive claims that he failed to raise on direct appeal. These claims center on the fact that his 1995 indictment did not allege the drug quantity and the jury did not make any findings as to the drug quantity. Because Thomas procedurally defaulted this issue in the criminal proceedings, ordinarily he would have to show both cause for his procedural default and prejudice resulting from the error. *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)) (imposing the "cause and actual prejudice" standard on motions for collateral relief when no objection was made on direct appeal); *see also Reed v. Farley*, 512 U.S. 339, 354 (1994) (stating that "[w]here the petitioner--whether a state or federal prisoner--failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice. . . .' "). However, a claim for ineffective assistance of counsel is properly made in a section 2255 motion because it raises an issue of constitutional magnitude and, as a general rule, cannot be raised on direct appeal. Ineffective assistance of counsel may constitute cause and prejudice sufficient to overcome the procedural default doctrine. *United States v. Conley*, 349 F.3d 837, 839 (5th Cir. 2003).

In *Blakely v. Washington,* 124 S. Ct. 2531 (2004), the Supreme Court invalidated an exceptional sentence imposed under the sentencing regime in place in the State of Washington. In doing so, the Supreme Court applied the rule in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), which requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The Supreme Court later

9

extended this ruling on January 12, 2005, in *United States v. Booker*, — U.S. —, 125 S. Ct. 738, 749 (2005), after finding "no distinction of constitutional significance between the Federal Sentencing Guidelines" and the state sentencing scheme at issue in *Blakely*. The Supreme Court held that the mandatory character of the Sentencing Guidelines was incompatible with the Sixth Amendment right to a jury trial. *Id.*, 125 S. Ct. at 749-50. As it did in *Blakely*, the Court in *Booker* extended the holding in *Apprendi* with the following modification: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.*, 125 S. Ct. at 756.

To the extent that *Blakely* and *Booker* represent a new rule, the retroactivity doctrine announced in *Teague v. Lane*, 489 U.S. 288 (1989) bars relief on collateral review to cases that have become final before the new rule is announced. An inquiry under *Teague* requires three steps. First, the reviewing court must determine the date on which the defendant's conviction became final. *See Beard v. Banks*, — U.S. —, 124 S. Ct. 2504, 2510 (2004). Next, the court must review the "legal landscape as it then existed," and determine "whether the Constitution, as interpreted by the precedent then existing, compels the rule." *Id.* (citations and quotations omitted). If not, then the rule is new. *See id.* If the rule is determined to be new, then the final step in the *Teague* analysis requires a court to determine whether the rule nonetheless falls within one of two narrow exceptions to the *Teague* doctrine. *See id.*

Thomas's conviction became final when the Supreme Court denied his petition for a writ of certiorari, before *Booker* was decided on January 12, 2005. The rule in *Booker*, which applies the holding in *Blakely* to the Sentencing Guidelines, is new. Although *Blakely* rests on *Apprendi*, which holds that all facts used to increase a sentence beyond the statutory maximum must be charged and proven to a jury, *Blakely* presented a new statement of "statutory maximum" for sentencing: "[T]he relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Blakely*, 124 S. Ct. at 2537 (emphasis in original). Before *Blakely*, every federal circuit court of appeals had held that *Apprendi* did not apply to Sentencing Guideline calculations based on judicial fact findings, so long as the sentence was imposed within the statutory maximum as determined by the United States Code.[1] By contrast, the statutory maximum under *Blakely* "is the maximum sentence a judge may impose *solely on the basis of facts reflected in the jury verdict or admitted by the defendant.*" 124 S. Ct. at 2537 (emphasis in original). After *Blakely* was decided, courts divided as to whether its holding applied to the Sentencing Guidelines.[2] This question was

---

[1]    *See, e.g., United States v. Hughes*, 369 F.3d 941, 947 (6th Cir. 2004); *United States v. Francis*, 367 F.3d 805, 820 (8th Cir. 2004); *United States v. Jardine*, 364 F.3d 1200, 1209 (10th Cir. 2004); *United States v. Alvarez*, 358 F.3d 1194, 1211-12 (9th Cir. 2004); *United States v. Phillips*, 349 F.3d 138, 143 (3rd Cir. 2003): *United States v. Patterson*, 348 F.3d 218, 228-29 (7th Cir. 2003); *United States v. Randle*, 304 F.3d 373, 378 (5th Cir. 2002); *United States v. Sanchez*, 269 F.3d 1250, 1268 (11th Cir. 2001); *United States v. Webb*, 255 F.3d 890, 898 (D.C. Cir. 2001); *United States v. Angle*, 254 F.3d 514, 518 (4th Cir. 2001); *United States v. Caba*, 241 F.3d 98, 100 (1st Cir. 2001); *United States v. Garcia*, 240 F.3d 180, 183-84 (2d Cir. 2001).

[2]    The Fifth Circuit initially held that *Blakely* did not affect the Sentencing Guidelines at all. *United States v. Pineiro*, 377 F.3d 464, 465-73 (5th Cir. 2004). The Second, Fourth, Sixth,

resolved when the Supreme Court held in *Booker* that the rule in *Blakely* applied to the Sentencing Guidelines. This is a new rule of the type barred from retroactive application by *Teague*.[3]

The final prong of the *Teague* inquiry is whether the new rule fits within an exception to the retroactivity doctrine. For example, the *Teague* doctrine does not apply to substantive rules, which include "decisions that narrow the scope of a criminal statute by interpreting its terms," as well as "constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." *Schriro v. Summerlin*, — U.S. —, 124 S. Ct. 2519, 2522-23 (2004) (internal citations and quotations omitted). Substantive rules of this sort "apply retroactively because they 'necessarily carry a significant risk that a defendant stands convicted of "an act that the law does not make criminal"' or faces a punishment that the law cannot impose upon him." *Id.* (citation and quotation omitted). The *Blakely* rule that was extended in *Booker*, which involves only the manner in which a

---

and Eleventh Circuits also reached that conclusion. *See United States v. Mincey*, 380 F.3d 102 (2d Cir. 2004); *United States v. Hammoud*, 378 F.3d 436 (4th Cir. 2004) (en banc); *United States v. Koch*, 383 F.3d 436 (6th Cir. 2004) (en banc); and *United States v. Reese*, 382 F.3d 1308, 1310 (11th Cir. 2004).

[3] Every circuit court of appeals to address the issue so far has agreed that the rule in *Blakely*, as extended by *Booker*, is new for purposes of a *Teague* analysis. *See McReynolds v. United States*, 397 F.3d 479, 480 (7th Cir. 2005) (recognizing, implicitly, that the rule in *Booker* is new); *Humphress v. United States*, 398 F.3d 855, 861 (6th Cir. 2005) ("The *Booker* rule is clearly new."); *Varela v. United States*, 400 F.3d 864, 868 (11th Cir. 2005) (same); *United States v. Price*, 400 F.3d 844, 848 (10th Cir. 2005) (holding that *Blakely* "announced a new rule"). *See also Carmona v. United States*, 390 F.3d 200 (2d Cir. 2004) (concluding that the rule in *Blakely* is a new rule not retroactive in the context of a successive § 2255 motion); *Simpson v. United States*, 376 F.3d 679 (7th Cir. 2004) (same); *In re Dean*, 375 F.3d 1287 (11th Cir. 2004) (same); *In re Anderson*, 396 F.3d 1336, 1339-40 (11th Cir. 2005) (same); *In re Elwood*, — F.3d —, 2005 WL 976998, *2 (5th Cir. 2005) (same).

12

defendant's sentence is determined, does not qualify as substantive under this standard, meaning that it is a procedural rule subject to the *Teague* doctrine of nonretroactivity. *See id*., 124 S. Ct. at 2523 (explaining that "rules that regulate only the *manner of determining* the defendant's culpability are procedural").

With respect to procedural rules, an exception to the *Teague* doctrine exists if the new rule requires the observance of procedures that are "implicit in the concept of ordered liberty." 489 U.S. at 307. However, this exception is reserved for the "small set of 'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Summerlin*, 124 S. Ct. at 2523 (citing *Saffle v. Parks*, 494 U.S. 484, 495 (1990) (quoting *Teague*, 489 U.S. at 311)). To fit within this exception, a new rule must meet two requirements: (1) infringement of the rule must "seriously diminish the likelihood of obtaining an accurate conviction," and (2) the rule must "alter our understanding of the *bedrock procedural elements* essential to the fairness of a proceeding." *Tyler v. Cain*, 533 U.S. 656, 665 (2001) (citing *Sawyer v. Smith*, 497 U.S. 227, 242 (1990) (quoting *Teague*, 489 U.S. at 311)) (emphasis in original) (citations and internal quotations omitted). An example of a watershed rule which might fit squarely within the second *Teague* exception is the rule in *Gideon v. Wainwright*, 372 U.S. 335 (1963), which established the affirmative right to counsel in all felony cases. *See Beard*, 124 S. Ct. at 2513-14 (commenting that the Supreme Court has yet to find a new rule which fits within the "watershed" category, but that the holding in *Gideon* "might" be such a rule).

The Supreme Court has already answered negatively the question whether judicial fact finding during capital sentencing so seriously diminishes accuracy as to constitute an impermissibly large risk of injustice. *See Summerlin*, 124 S. Ct. at 2525 (holding that the decision in *Ring v. Arizona*, 536 U.S. 584 (2002), which invalidated judicial fact finding in death penalty cases under the rule announced in *Apprendi*, was a procedural rule not retroactive on collateral review). The rule in *Blakely* fails to fit within the exception to *Teague*, and it is not retroactive to cases on collateral review. *See United States v. Price*, 400 F.3d 844, 849 (10th Cir. 2005) ("We conclude, therefore, that *Blakely* did not announce a watershed rule of criminal procedure that would apply retroactively to initial § 2255 motions.").

More importantly, the holding in *Booker* plainly applies only to "cases on direct review" and is not retroactive to a collateral challenge of the sort Thomas raises. *Booker*, 125 S. Ct. at 769. Every circuit court of appeals to address this question has agreed that *Booker* is not applicable to collateral challenges filed under 28 U.S.C. § 2255. *See McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005) ("We conclude . . . that *Booker* does not apply retroactively to criminal cases that became final before its release on Jan. 12, 2005."); *Humphress v. United States*, 398 F.3d 855, 856 (6th Cir. 2005) (rejecting an initial § 2255 motion and holding that *Booker* does not apply retroactively to cases already final on direct review); *Varela v. United States*, 400 F.3d 864, 868 (11th Cir. 2005) ("*Booker*'s constitutional rule falls squarely under the category of new rules of criminal procedure that do not apply retroactively to § 2255 cases on collateral review."). Because

his *Booker* claim is barred by *Teague*, the defendant is not entitled to relief on this issue under 28 U.S.C. § 2255.  *See In re Elwood*, 2005 WL 976998 at *5 (5th Cir. April 28, 2005)(holding that the "Supreme Court has not made *Booker* retroactive to any cases on collateral review.").

Alternatively, even viewed on the merits, Thomas has failed to show that any of the substantive claims he seeks to raise under section 2255 would entitle him to the relief he seeks.  The record does not disclose any basis to find that Thomas has claimed actual innocence; shown cause for failure to raise the claims on direct appeal; or shown actual prejudice from the failure.  The cases are clear that when an indictment does not allege the quantity of drugs, and the sentence is enhanced, but without an objection at trial, there is no prejudice if the evidence of quantity was "overwhelming and uncontroverted." *United States v. Davis*, 380 F.3d 821, 825-826 (5th Cir. 2004).  The evidence in this case showed that Officer Bryant rejected the crack, claiming that the deal was for powder cocaine. Tommy Lee returned the shoe box and its contents to the Taurus and the Taurus drove off.  Officer Bryant advised surveillance officers via radio that the cocaine was in the royal blue Ford Taurus. Police officers in the vicinity of the restaurant spotted the Taurus and a chase ensued. The driver tossed the shoe box out of the window.  The shoebox was recovered and the contents examined.  It contained 1.8 kilograms of cocaine base, or crack cocaine.

The final set of issues Thomas raises is ineffective assistance of trial and appellate counsel.  To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness,

and that such deficient performance was prejudicial. *Strickland*, 466 U.S. at 687; *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001). In assessing whether an attorney's performance was deficient, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Additionally, in order to show prejudice, a petitioner must demonstrate that counsel's errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. "Thus, an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or reliable, is defective." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).

The record reveals no basis to find ineffective assistance, as Thomas asserts. His primary claims relate to the effect of *Apprendi* and *Booker* errors, which are not applicable retroactively. The remaining claims either repeat what the Fifth Circuit has already rejected as an argument on direct appeal or are conclusory and inadequate as an argument for habeas relief. Thomas fails to identify what trial counsel should have done differently in investigating and presenting witnesses, or what additional information would have been presented and how that would have affected the outcome of the trial. *See United States v. Harris*, 2005 WL 958219 (5th Cir. April 27, 2005). The claim as to trial counsel's ineffectiveness in attempting to learn the identity of the confidential informant is contradicted by the record, which shows that trial counsel did attempt to learn the confidential informant's identity but was unsuccessful because of the circumstances that the Fifth Circuit held justified the withholding of that information. *Thomas*, 348 F.3d at 84. Thomas has not

shown a basis to find either deficient performance or prejudice, and cannot use ineffective assistance of trial or appellate counsel as a basis for habeas relief.

## IV.    Certificate of Appealability

Thomas's section 2255 motion is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, codified as amended at 28 U.S.C. § 2253. A certificate of appealability is required before an appeal may proceed. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability), *cert. denied sub nom. Monroe v. Johnson*, 522 U.S. 1003 (1997). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, — U.S. —, 124 S. Ct. 2562, 2569 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds,

the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For all the reasons set forth above, this court concludes that jurists of reason would not debate whether the movant has stated a valid claim, or whether any procedural ruling in this case was correct. Accordingly, a certificate of appealability will not issue.

Based on the foregoing, this court finds that Thomas is not entitled to the relief he seeks. Thomas's section 2255 motion is denied and the corresponding civil action is dismissed with prejudice. A certificate of appealability is denied

Final judgment will issue by separate order.

SIGNED on June 21, 2005, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge